**Robert R. WALLACE and Tracy Pride Stoneman, Appellants,**

v.

**INVESTMENT ADVISORS, INC. and Nicholas Noyes Wentworth, Appellees.**

No. 06–96–00085–CV.

Court of Appeals of Texas, Texarkana.

Dec. 9, 1997.

John M. Frick, Mills Presby & Associates, Dallas, for appellants.

Alan W. Tompkins, Secore & Waller, Dallas, John J. King, Chamberlain Hrdlicka White, Houston, for appellees.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

GRANT, Justice.

This appeal is from the assessment of sanctions in the amount of $1,850.00 against attorney Tracy Stoneman for an abuse of discovery procedures and for fraudulently filing a lawsuit against George Lollis.

Attorney Stoneman contends that the court erred by sanctioning her because

- there was no evidence or insufficient evidence to support the court's finding that the lawsuit was fraudulent pursuant to TEX.R. CIV. P. 13 and 215;
- there was no evidence or insufficient evidence to support the court's finding that she had knowingly made a false statement or failed to disclose material facts to the court when disclosure was necessary pursuant to TEX. DISCIPLINARY R. PROF. CONDUCT 3.03 (1990); and

● there was no evidence or insufficient evidence to support the court's finding that she used improper methods to attempt to obtain evidence from ˙Lollis.

**Underlying Facts:**

Robert Wallace is an investor who contracted for the services of Investment Advisors, Inc. (IAI) to help him invest his money. The investment advisor, Nicholas Wentworth, did not act to his satisfaction, and Wallace alleges that he lost sizeable sums of money because of Wentworth's mismanagement of his account. George Lollis is an employee of Merrill Lynch, and apparently assisted Wallace in choosing IAI as his investment firm.

After realizing that he had lost over a half-million dollars, Wallace filed an arbitration proceeding against IAI and Wentworth with the American Stock Exchange. During the proceeding, Wallace sought to depose Lollis. The parties indicate that under the applicable rules of the arbitration forum, there is no right to depose a nonparty and that Lollis declined to be voluntarily deposed.[1] There was also a dispute between Wallace and IAI about whether arbitration was an available remedy.[2]

█ This confluence of facts resulted in an agreement between IAI and Wallace in which IAI agreed to accede to the jurisdiction of the Exchange for arbitration, if Wallace undertook certain acts, the following of which are pertinent to this case:

Wallace reserves the right to dismiss its (sic) Statement of Claim against IAI Defendants in the AMEX arbitration proceeding for the sole purpose of attempting to secure the right to depose George Lollis, an account executive with Merrill Lynch in Dallas, Texas, and other personnel of Merrill Lynch (not to exceed a total of three Merrill Lynch personnel) upon the following terms:

(a) Wallace must exercise its (sic) right to dismiss (without prejudice) his Statement of Claim against IAI Defendants within fifteen (15) days from the date of execution of this Agreement.

(b) If Wallace exercises his rights under 4(a) above, then Wallace must, within fifteen (15) days from the date of exercise of his rights under 4(a), commence a lawsuit in State District Court in Harris County, Texas, against IAI Defendants based upon the causes of action set forth in Wallace's Statement of Claim filed in the AMEX arbitration proceeding above and simultaneously issue process to depose George Lollis within five (5) days of the date of IAI Defendants filing a General Denial in the above State Court action ("State Action"). Subject to the time limitations stated in 4(e), Wallace may depose any other Merrill Lynch personnel (up to three in number) by issuing notices of deposition within 20 days after the completion of Lollis' deposition.

(c) IAI Defendants will accept service of process by Certified Mail Return Receipt Requested of the Petition filed in the State Action pursuant to this Agreement upon their legal counsel, John J. King.... IAI Defendants will file a General Denial to Wallace's Original Petition in the State Action within 10 days of receipt thereof by counsel for IAI Defendants.

(d) Wallace will have no right to engage in any type of discovery in the State Court action against IAI Defendants.

(e) On or before 90 days from the date of commencement of the State Action against IAI Defendants, *Wallace shall*

---

1. The National Association of Securities Dealers, Inc.Code of Arbitration provides under Section 10322 (Subpoenas and Power to Direct Appearances) that the arbitrator and counsel of record to the proceeding "shall have the power of subpoena process as provided by law. All parties shall be given a copy of a subpoena upon its issuance. Parties shall produce witnesses and present proof to the fullest extent possible without resort to the subpoena process." It further states that the "arbitrator(s) shall be empowered without resort to the subpoena process to direct

the appearance of any person employed or associated with any member of the Association and/or the production of any records in the possession or control of such persons or members."

2. It is undisputed that the contract between Wallace and Merrill Lynch required that any disputes or complaint be submitted to arbitration and also that no similar agreement to arbitrate existed between Wallace and IAI.

*non-suit the State Action* against IAI Defendants and refile its Statement of Claim in the arbitration proceeding between Wallace and Merrill Lynch and Wallace may join IAI Defendants in the refiled Statement of Claim, and, in such an event, IAI Defendants agree to submit to (sic) themselves to AMEX jurisdiction for purposes of Wallace's Statement of Claim.

(Emphasis added.) The facts in this case are undisputed. Stoneman argues that the mere fact of the existence of the contract set out above does not make the suit that she filed against IAI a fraud on the court, that it was *real litigation,* and that she therefore had a right to depose Lollis, and that the court erred in concluding that she did not have such a right. The proceeding was scripted in advance by the parties in collusion against the witness. The real controversy was to be resolved in the arbitration proceeding. This suit more than violates the spirit of the rule. The suit was rendered groundless because it was not intended to resolve the litigation in this forum, and the advance scripting demonstrated the lack of good faith. The witness appropriately recovered his costs for this collusion.

The trial court found that

● the agreement was filed "for the sole purpose of attempting to secure the deposition of George Lollis";

● the lawsuit and issuance of the subpoena constituted a "fraudulent filing" with the court;

● Stoneman knowingly made "a false statement of material fact or law to the Court by failing to disclose a material fact to the Court when disclosure of such fact is necessary";

● Stoneman used "improper methods of attempting to obtain evidence" that violate Lollis's legal rights; and

● Wallace's lawsuit was only a subterfuge.

**3.** *GTE Communications Sys. Corp. v. Tanner,* 856 S.W.2d 725, 730 (Tex.1993); *Woodward v. Jaster,* 933 S.W.2d 777, 782 (Tex.App.—Austin 1996, no writ).

**4.** *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476

Based upon these findings, the trial court sanctioned Stoneman personally for the amount of attorney's fees and costs expended by Lollis in connection with the Harris County lawsuit, to be paid to Lollis.

## Standard of Review

■ The imposition of Rule 13 sanctions is made within the discretion of the trial court. Thus, we will set aside its decision only upon a showing of a clear abuse of discretion.[3] A trial court abuses its discretion when it acts in an unreasonable and arbitrary manner or when it acts without reference to any guiding rules or principles.[4]

## Analysis

■ It is clear that the lawsuit was entered into in the express agreement that it would be dismissed. Lollis was not a party to the lawsuit. Rather, he was to be deposed as a witness. It is a lawsuit that would never reach resolution, filed for the sole purpose of obtaining testimony for use in a separate action. Counsel does not dispute these facts, but instead argues that there is simply nothing wrong with acting in this manner. We disagree.

■ Both parties have agreed on the purpose and outcome of the purported litigation. It was not an outcome that had any relationship to the resolving of a controversy, but rather its sole purpose was to obtain information for another forum. It is fundamental to litigation that there be a justiciable controversy. This means there must exist a real and substantial controversy involving a genuine conflict of tangible interests.[5] While it is true that the parties to this litigation had a justiciable controversy, it was not a controversy intended to be litigated in the trial court. Instead, it was a controversy already in the process of being resolved in another forum. The purpose of the filing of this litigation is clearly set forth in the agree-

U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

**5.** *Scurlock Permian Corp. v. Brazos County,* 869 S.W.2d 478 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

ment, which specifically provides dismissal of the case before any controversy is resolved.

■ We recognize that Rule 737 of the Rules of Civil Procedure provides an exception to the justiciable controversy rule in that it allows litigation against a third party for the purpose of discovery.[6] In the present case, however, this action was not brought in the form of a bill of discovery against the party from whom discovery was sought, and the trial court determined that the pleadings made false statements of material facts and law and failed to disclose a material fact to the court. In effect, the litigation was not filed as an open request for discovery, but was disguised as a suit to resolve a controversy. Thus, the parties cannot find a shield under a rule providing litigation for discovery when the litigation was not pleaded in the proper manner.

■ Stoneman contends that the court erred in imposing sanctions because the actions set out above were not actionable. She contends that the language of Rule 13 is restrictive and does not allow the imposition of sanctions in this situation unless the suit is groundless and brought in bad faith.[7] Stoneman contends that her suit was not "groundless" and, therefore, her actions are not sanctionable. The fact is that this was not real litigation, but was a ruse on the court, which was not legitimate litigation because of its avowed purpose. No party was in court for the purpose of enforcing a right or seeking a remedy from the court. No remedy was available because of the underlying agreement. The litigation was filed as if it were seeking a remedy in the same controversy involving the pending arbitration, and because this was done knowingly, it constitutes bad faith. Improper motive is an essential element of bad faith.[8] An improper motive is shown by the attempt to use the judiciary for discovery by knowingly filing a lawsuit pre-

tending to seek resolution of a controversy when the suit was not filed for that purpose.

■ Stoneman contended there was no evidence or insufficient evidence to support the court's finding that she had knowingly made a false statement or failed to disclose material facts to the court when disclosure was necessary pursuant to State Bar Rule 3.03. We have already discussed the conduct in terms of the appropriateness of a sanction. Even though the trial court made a finding concerning State Bar Rule 3.03 and 4.04, such a finding was not necessary for imposing sanctions. The referral of this matter to the State Bar began an administrative process, which may later be subject to judicial review. Our review of matters pertaining to alleged professional misconduct found by the State Bar would be premature. At this point this is a state agency matter and not a matter for the judiciary.

■ Stoneman contends that there was no evidence or insufficient evidence to support the trial court's finding that she used improper methods to attempt to obtain evidence from Lollis. As we have already determined, this litigation was not proper and, therefore, any proceedings thereunder, especially proceedings that were the basis of the subterfuge of filing this litigation, would be improper. Thus, the filing of this lawsuit in an attempt to obtain evidence from Lollis, which is undisputed in the record, is legally and factually sufficient to support the trial court's findings.

We find that there is legally and factually sufficient evidence to support the court's finding that the lawsuit was fraudulent and that Stoneman used an improper method to attempt to obtain evidence for a matter not involved in the present litigation.

■ Stoneman also contends that the statutes controlling arbitration proceedings in Texas apply to this situation, and that under either Article 171.012(g)(3) or (h)(1),[9] the

6. This is further discussed in the opinion on rehearing.

7. There are other purposes for imposing sanctions under Rule 13, but they are not applicable to this case.

8. *Ford v. Aetna Ins.Co.,* 394 S.W.2d 693 (Tex.Civ. App.—Corpus Christi 1965, writ ref'd n.r.e.).

9. (g) In advance of the institution of any arbitration proceedings, but in aid thereof, an application may be filed for order or orders to be entered by the court, including but not limited to applications:

court was authorized to entertain a suit brought with the express purpose of obtaining discovery for use in an arbitration proceeding.[10]

The suggested result is not, however, supported by the context of the statute from which these subsections have been extracted. Article 171.012 sets out in detail the procedure to be followed to invoke the jurisdiction of a court and institute an arbitration proceeding in a county in Texas. The statute delineates the power of the court to stay any other actions involving that subject matter, provide for discovery during or before the arbitration proceeding, to appoint arbitrators, to require compliance with the arbitrator's orders as if they were orders of the court, to issue orders on behalf of the arbitrators or conduct ancillary proceedings if necessary, to direct that security for the satisfaction of any future judgment be provided and to enforce the eventual judgment. The section also provides that its listing of the court's powers is not exclusive.

This section explicitly directs the manner in which an arbitration proceeding initiated before a Texas court is begun and conducted. By appellants' own admission, this arbitration must proceed in an entirely different forum without any connection to the Texas court system. The statute providing that a court may order discovery in certain situations before the institution of an arbitration proceeding is an integral part of the statute as a whole, which explains how an arbitration proceeding may be sought in a Texas court. It does not purport to reach beyond those bounds to apply to an attempt to obtain discovery for an action that is proceeding, or is about to proceed, in an entirely different

forum, and there is no reason to read the statute to provide such a result.

The judgment of the trial court is affirmed.

CORNELIUS, Chief Justice, dissenting.

I do not agree that Ms. Stoneman was guilty of sanctionable conduct in this matter.

Appellees do not even contend that Ms. Stoneman violated any express provisions of the rules; in effect, they contend that she violated the "spirit" of the rules by filing a "fraudulent suit" she agreed to later dismiss, in order to secure discovery matters to use in the *same* legal dispute, but in a different forum.

Although I have always believed that every citizen, and especially lawyers, should obey the spirit of the laws and the rules, the "spirit of a rule" is too ambiguous and too ethereal a standard on which to base punitive sanctions. It is axiomatic that in our legal system punitive statutes or rules must be explicit, and the party punished must be proven to have violated the explicit language of the applicable statute or rule.

It is undisputed in this record that Ms. Stoneman acted in a good-faith belief that she had a legal right to do what she did. Although the majority holds that her actions violated the rules, she should not be punished for her good-faith interpretation of the law simply because her interpretation turned out to be erroneous.

Ms. Stoneman at least had an arguable right to use the procedure she followed. Our rules provide that a party has an absolute right to dismiss her case or take a nonsuit at any time before she has introduced all of her evidence. TEX.R. CIV. P. 162. There is no

---

    . . .
    (3) . . . seeking from the court in its discretion, order for deposition or depositions needed in advance of the commencement of the arbitration proceedings for discovery, for perpetuation of testimony or for evidence;
    . . . .
    (h) During the pendency of any arbitration proceedings before the arbitrators; an application may be filed for order or orders to be entered by the court, including but not limited to applications:
        (1) referred to or to serve any purpose referred to in Subsection (g). . . .

TEX. CIV. PRAC. & REM.CODE ANN. art. 171.012 (deleted 1997) (current version at TEX. CIV. PRAC. & REM.CODE ANN. art. 171.086 (Vernon Supp.1998)).

**10.** The first subsection permits discovery before the arbitration proceeding is instituted, but in aid of the proceeding, and the second subsection permits discovery during the pendency of the proceeding. In the present case, it is not entirely clear which would apply, because the arbitration had been instituted, but then withdrawn, with an agreement in place to reinstitute the proceeding after the discovery from Lollis was completed.

evidence that her claims were groundless; that she acted in bad faith or for the purpose of harassment; that she filed any pleading that was false; that she filed the suit as an experiment to get an opinion of the court; or that the suit was filed for delay. There was no contumacious conduct or disobedience of court orders. She had a genuine justiciable controversy she was seeking to resolve. She simply decided to resolve that controversy in a different quasi-judicial forum favored by our law and public policy, and to use the judicial process as an adjunct to the resolution of her dispute in that forum. She did not conceal facts from the trial court or mislead the court. She fully revealed her acts and her purposes at the first hearing held on the matter.

In hindsight, one might conclude that Ms. Stoneman's actions were improper. But she had an arguable right to seek redress, and she sought it in good faith. There was and is no legal authority holding that Ms. Stoneman's procedure constituted sanctionable conduct. This court has been unable to agree on the legality of her conduct. We should not expect a greater degree of clairvoyance on the part of a lawyer who is required daily to guess how the courts will rule when the legality of the action is questionable.

Sanctions must fit the offense, must be just, and must not be excessive. *Trans-American Natural Gas Co. v. Powell,* 811 S.W.2d 913 (Tex.1991). I would hold that the trial court abused its discretion in assessing sanctions in these circumstances.