Rockne ONSTAD, Appellant,

v.

James O. WRIGHT, III, M.D., et al., Appellees.

No. 06–00–00121–CV.

Court of Appeals of Texas, Texarkana.

Submitted June 12, 2001.

Decided Aug. 21, 2001.

Rehearing Overruled Sept. 18, 2001.

---

1. *See Davis v. Medical Evaluation Specialists, Inc.,* 31 S.W.3d 788, 794–95 (Tex.App.— Houston [1st Dist.] 2000, pet. denied).

John R. Mercy, Mercy, Carter & Elliott, LLP, Texarkana, for appellant.

Hunter T. Hillin, Hillin & Owen, LLP, Kay E. Ellington, Law Offices of Joel Steed, PC, Dorothy Prengler, Law Offices of Dorothy Prengler, PC, Dallas, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

Rockne Onstad, counsel for plaintiffs in a medical malpractice lawsuit, appeals from the imposition of a monetary sanction by the trial court on him personally after it declared a mistrial in the lawsuit. Onstad contends that the trial court's imposition of the sanction for a violation of its order in limine was outside its authority, that it was excessive, that prerequisites to issuance of a sanction were not met, and that the sanction violated TEX. CIV. PRAC & REM.CODE ANN. § 7.011 (Vernon 1986).

Onstad violated an order on a Motion in Limine during the trial of the underlying case. Because of the violation, the trial court ordered a mistrial and, after a hearing, imposed a sanction of over $32,000, a part of the amount expended by the defendants to participate in the trial to that point. Onstad appeals from that order.

The record shows that during the course of a medical malpractice lawsuit, after an extensive hearing, an order on a Motion in Limine was granted in which the trial judge ordered that no mention be made of a "shutdown" of a medical unit after the incident on trial. The surgical unit was shut down in June 1993. The surgery was in May 1993. Plaintiffs' witness Dr. James Hurley testified that he had not talked to a doctor since the program had been shut down. Plaintiffs' counsel then asked Dr. Hurley whether he had anything to do with the surgical program being shut down. Dr. Hurley answered yes, and the trial judge intervened reminding counsel pointedly that the testimony was outside what was authorized.

Counsel then asked Dr. Hurley whether he had begun referring patients elsewhere because of the increase in infection, to which he answered, "Yes." Counsel then asked him to compare the results at the transferee hospital with those at St. Michael Hospital during the first half of 1993. Hurley's answer was, "Well, after the program was shut down, there was some places. . . ."

The trial judge intervened again, removed the jury, and castigated counsel for ignoring his ruling yet again. Defense counsel then moved for a mistrial based on undue prejudice caused by the admission of the evidence. The court reserved taking further action at that time and proceeded with the case.

The next day, before proceedings began, the trial judge stated that he had the court reporter transcribe the relevant portions of testimony for his review. Based on counsel's direct disregard of his order, the judge ordered a mistrial. He then informed all counsel by letter that he would hold a hearing on sanctions. That hearing was conducted on March 23, 2000. All parties were given the opportunity to present evidence and arguments. The judge stated that he would impose a sanction. Evidence was then presented regarding the expenses caused by the mistrial, and the court imposed a sanction in that amount.

The sanction is payable by Rockne Onstad personally and was originally due to be tendered by May 1, 2000. Onstad first sought review through mandamus, and on May 24, 2000, this court entered an order in which we found that he had an adequate remedy through appeal, but directed him to pay the sanction into the registry of the

court, rather than to opposing counsel, pending final conclusion of the litigation.

**Jurisdiction**

We first address appellees' (hereafter Wright) argument that the appeal is untimely and that we have no jurisdiction over the appeal. Wright argues that if Onstad wished to pursue an appeal separately from the summary judgment in the underlying case, he was required to perfect his appeal within the appellate timetables from the date of the sanction order, rather than from the date of the final judgment. Counsel has provided no authority directly on point, and we are aware of none that explicitly addresses this issue.

In determining our jurisdiction in this instance, we recognize that several matters are atypical. First, it is unquestioned that Onstad has a right to appeal the order awarding the sanction, and that even if the final judgment in the underlying case had not been appealed, he could have brought an appeal on his own to contest the sanction award. *See Wallace v. Inv. Advisors, Inc.*, 960 S.W.2d 885 (Tex.App.—Texarkana 1997, pet. denied), in which we considered such an appeal.

Wright attempts to distinguish *Wallace* because in that case there was no appeal from the final judgment. He argues that this case has an ongoing appeal from the judgment and, therefore, this appeal from the sanction award should have been brought only as a part of the parallel appeal now being brought from the judgment on the merits. Because it was not, Wright argues that we should dismiss this appeal.

Alternatively, Wright argues that because Onstad is taking the position that he may take a separate appeal from the order awarding the sanction, any timetable should be calculated from the date of the order rather than the date of the final judgment, which would make the appeal untimely.

█ Generally, appeals may be taken only from final judgments. *N.E. Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 895 (Tex.1966). However, the Legislature has provided for appeals from some types of orders entered during the pendency of a lawsuit.[1] The type of appeal in the present case is not one authorized by statute from an interlocutory order. Thus, any appeal is necessarily taken from the date of the final judgment.

Neither the Rules of Appellate Procedure nor any statute specifically states how this type of an appeal should be handled. Onstad is not a party to the lawsuit and thus would not ordinarily have the authority to file an appeal from that judgment. We recognize, however, that he necessarily has a right to appeal from the imposition of the sanction against him. *See In re Onstad*, 20 S.W.3d 731 (Tex. App.—Texarkana 2000, orig. proceeding). Further, our answer to that question in this particular situation is required by our previous opinion in the mandamus proceeding, in which we stated clearly that the order awarding the sanction was reviewable on appeal from the final judgment.

The technical problem is whether this appeal should be brought from the final judgment as a part of the plaintiffs' appeal, or whether it may be brought as a sepa-

---

1. *See;* TEX.R. CIV. P. 76a(8) (immediate appeal from order granting or denying sealing of court records); TEX. CIV. PRAC. & REM.CODE ANN. § 15.003(c) (Vernon Supp.2001) (permitting interlocutory joinder and intervention appeals), § 51.012 (Vernon 1997) (final judgment of district and county courts), § 51.014 (Vernon 1997) (list of interlocutory orders), § 171.017 (Vernon 1997) (arbitration).

rate appeal. There is no controlling authority that requires either result.

■ In the context of this type of an appeal, and given the history of this case before this court, we find that it is appropriate for the appeal to be brought separately. The directive of the trial court from which Onstad appeals is not a part of the final judgment, but was made final by that judgment. This is structurally similar to a situation where a court imposes attorney's fees as a discovery sanction. In that situation, the imposition of the monetary attorney's fee sanction is reviewable on appeal from a final judgment. *Tjernagel v. Roberts,* 928 S.W.2d 297, 303 (Tex. App.—Amarillo 1996, orig. proceeding); *Elect. Data Sys. Corp. v. Tyson,* 862 S.W.2d 728, 736 (Tex.App.—Dallas 1993, orig. proceeding); *Susman Godfrey, L.L.P. v. Marshall,* 832 S.W.2d 105, 108 (Tex.App.—Dallas 1992, orig. proceeding). The final judgment itself was not against Onstad, the attorney for the plaintiffs, because he was not and is not a party to the lawsuit. Indeed, if no appeal had been taken by a party, it is clear that Onstad would have been required to file a separate appeal in order to contest the order awarding the sanction. We are not convinced that this situation is materially changed by the plaintiffs' decision to pursue an appeal. In this situation, we find it permissible for Onstad to appeal from the sanction in a separate appeal.

Onstad first contends that the sanction of $32,198.58 should be treated as a fine for contempt of court and that it is unlawful because it exceeds the maximum $500 award set out by statute. *See* Tex. Gov't Code Ann. § 21.002(b). (Vernon Supp.2001). There is indeed a resemblance between sanctions imposed for attorney misconduct and an order holding an attorney in con-

tempt of court. The courts, however, have not hesitated to differentiate between the two. For example, in *In re Bennett,* 960 S.W.2d 35 (Tex.1997), the Supreme Court sustained a sanction for $10,000 in attorney's fees as an exercise of the inherent power of the trial court. The authority to impose such sanctions is derived from the court's power to impose sanctions to discipline an attorney's behavior. *Id.* at 40. The court also recognized that a newly enacted (1995) statute provides authority for such sanctions after a specified procedure is followed by the court.

■ In support of his position that the contempt statute limits any fine to a maximum of $500, Onstad relies on *Kidd v. Lance,* 794 S.W.2d 586 (Tex.App.—Austin 1990, no writ). In that case, a defendant's attorney intentionally violated an order in limine, and the trial court ordered a mistrial, assessing a $53,000 fine against both the attorney and the party. In *Kidd* the court held that the procedure followed by the trial judge did not properly apply the contempt statute and issued a sanction far in excess of the $500 maximum. The court also declined to apply the imposition of sanctions under Tex. Gov't Code Ann. § 82.061 because the procedure used by the trial court violated the attorney's right to the application of due process protections.[2] The case does not explicitly limit a judge's remedy under these circumstances to application of the contempt statutes. Even if it did so, we do not agree that such a limitation on the inherent authority of a trial judge is appropriate. We do agree that due process must be followed by a court when it imposes a sanction.

There are more modes for a trial court to impose monetary penalties on an individual than just through the means of a

---

2. Tex. Gov't Code Ann. § 82.061(a) (Vernon Supp.2001) provides that, "An attorney at law

may be fined or imprisoned by any court for misbehavior or for contempt of the court."

contempt proceeding. This is one such fashion in which a court can impose such a penalty. In the present case, this is not a punishment for wrongful acts, but is instead in the form of a reparation to be paid to a party injured by those acts. The contention of error is without merit.

**Reasonableness of Sanction**

Onstad next contends that the amount of the sanction was unreasonable because (1) an order on a motion in limine is only a preliminary ruling, (2) the testimony did not violate the order, (and even if it did), (3) counsel did not make a timely objection to the evidence, and (4) any error was curable by instruction—thus the mistrial was unnecessary. Based on these factors, Onstad contends that the trial court abused its discretion by issuing a sanction against him for the violation.

■ In reviewing a sanction determination by a trial court, we look to see if the trial court abused its discretion. *See Scott & White Mem'l Hosp. v. Schexnider*, 940 S.W.2d 594 (Tex.1996) (involving a Rule 13 sanction). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the court acted without reference to any guiding rules or principles, and the mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate judge does not demonstrate such an abuse. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238 (Tex. 1985).

■ First, counsel correctly states that a motion in limine is a preliminary ruling by a trial court. A motion in limine is defined as a procedural device that permits a party to identify, before trial, certain evidentiary rulings that the court may be asked to make so as to prevent the asking of prejudicial questions and the making of prejudicial statements in the presence of the jury. *Hartford Accident & Indem. Co. v. McCardell*, 369 S.W.2d 331, 335 (Tex.1963); *Fort Worth Hotel Ltd. P'ship v. Enserch Corp.*, 977 S.W.2d 746, 757 (Tex.App.—Fort Worth 1998, no pet.). The purpose of a motion in limine is thus to prevent the other party from asking prejudicial questions and introducing prejudicial evidence in front of the jury without first asking the court's permission. *Weidner v. Sanchez*, 14 S.W.3d 353, 363 (Tex.App.—Houston [14th Dist.] 2000, no pet.).

■ Where a trial court's order on a motion in limine is violated, an appellate court reviews the violations to see if they are curable by an instruction to the jury to disregard them. *See Dove v. Dir., State Employees Workers' Comp. Div.*, 857 S.W.2d 577 (Tex.App.—Houston [1st Dist.] 1993, writ denied). Violations of an order on a motion in limine are incurable if instructions to the jury would not eliminate the danger of prejudice. *Dennis v. Hulse*, 362 S.W.2d 308, 309 (Tex.1962); *Kendrix v. S. Pac. Transp. Co.*, 907 S.W.2d 111, 114 (Tex.App.—Beaumont 1995, writ denied); *Dove*, 857 S.W.2d at 580.

■ This situation, however, is different than a complaint about the improper admission of evidence. A motion in limine will not preserve error to the admission of inadmissible evidence. An order on a motion in limine, however, is an action taken by the trial court in the exercise of its control over proceedings before that court. When a trial court issues an order granting such a motion in limine, the opposing party has a duty to comply with that order and to instruct the witnesses to do the same. Noncompliance with that order may lead to contempt or other sanctions the trial court deems appropriate. *Heidelberg v. State*, 36 S.W.3d 668, 673 n.

3 (Tex.App.—Houston [14th Dist.] 2001, no pet. h.); *see Harnett v. State,* 38 S.W.3d 650, 655 (Tex.App.—Austin 2000, pet. ref'd) (citing *Brazzell v. State,* 481 S.W.2d 130, 131 (Tex.Crim.App.1972)); *see also Weidner,* 14 S.W.3d 353; *Lassiter v. Shavor,* 824 S.W.2d 667, 669 (Tex.App.—Dallas 1992, no writ) (holding in civil case trial court may strike a party's pleadings as a sanction for violation of an order in limine if the circumstances warrant). The violation of a motion in limine may entitle a party to relief, but any remedies available with regard to such a violation lie with the trial court. *See Brazzell,* 481 S.W.2d at 131. If its order has been violated, the trial court may apply the sanctions of contempt or take other appropriate action. *Lewis v. State,* 627 S.W.2d 492, 494 (Tex. App.—Houston [1st Dist.] 1981, no pet.).

Thus, the mere fact that the order on a motion in limine is a preliminary ruling does not defeat the court's authority to sanction counsel for failing to comply with the ruling.

Onstad next argues that his questions and the answers propounded by his witness did not violate the terms of the order. He points out that the record shows that the surgical unit had been "shut down" several years before the acts in this case (as well as the "shutdown" shortly after the surgery at issue) and that because of the state of the evidence at the time of the answers, the jury necessarily would have had to relate the statement to the 1980's shutdown of the unit, rather than the shutdown that occurred after this incident in 1993.

The sequence of testimony shows that the witness was questioned about the 1980's shutdown. Counsel then shifted his questioning to the current time frame and the problems that had occurred before the surgery in the present case.

Q. And have you ever been involved in similar outbreaks at St. Michael's Hospital where they shut down the whole surgery?

A. Yes, in the mid 80's there was a similar cluster of cases and the surgeons shut down the program, cleaned it up, and got going again.

. . . .

Q. Did you know about that cluster or outbreak of infections before Ronnie Woodruff had his surgery?

A. We knew that there were two (2), and I think two (2) infected patients in the front of medical at that time. . . .

. . . .

Q. If you had known about this group of cases back before Ronnie, what would you have done?

A. Sent him someplace else.

Q. Why would you have done that?

A. So he wouldn't get infected.

Q. How did you come to learn about the problems that we see up here on that board?

A. We had those three (3)—two (2) or three (3) patients in the front of medical, and then Ronnie Woodruff, and then another patient on the floor—

MR. HILLIN: Objection Your Honor, getting after May 27th—

[TRIAL JUDGE]:—limit it to that.

Q. (Mr. Onstad) I just want to know, how did it come to be-let me back up. Did Dr. Wright, Stockinger, or Hodson ever shut down the program following that group of infections?

A. No.

Q. Did they ever call you in and say, hey, Dr. Hurley, we've got a problem, we need to work on it, and you're part of the heart care team—

A. —no. I notice in the deposition that Dr. Wright said he talked to me in

June that there was a problem of mediastinitis. If he did that, I sure don't remember. In fact, I don't think there was many—I don't think there's been words spoken between the two of us since the program was shut down. I sure don't remember that conversation.

Q. Did you have anything to do with the program being shut down?

A. Yes.

[TRIAL JUDGE]: That's outside what is authorized, Mr. Onstad. I believe you knew about that ruling.

MR. ONSTAD: Sir?

[TRIAL JUDGE]: That's not a ruling that we weren't all familiar with.

Q. (Mr. Onstad) During this period of time, did you ever start referring patients elsewhere because of the increase in infection?

A. Yes.

Q. And where did you refer them?

A. Little Rock.

Q. And to what service?

A. The Ransom service.

Q. And did you compare the type of results you were getting with Dr. Ransom's service, with what was happening in St. Michael Hospital with the Wright group during the first half of '93?

A. Well, after the program was shut down, there was some places—

[TRIAL JUDGE]: Excuse me just a minute. Ask the jury to step outside.

BAILIFF: Yes sir.

The question is whether the trial court was correct in concluding that the questions and testimony were related to the 1993 post-incident "shutdown" of the surgical unit. From the viewpoint of the court and counsel, it is clear that the questions and testimony did indeed relate to the 1993 shutdown and thus violated the terms of the order. The jury could have understood from the context that counsel was not discussing the 1980's shutdown, but one that occurred at some later date, and by the final reference by the expert witness, it would have been clear that the prior discussion covered a different time frame—and that the time was after the injury to this plaintiff.

The trial judge's conclusion that the testimony referred to the "shutdown" covered by his order on the motion in limine is supported by the record.

Onstad next argues that the trial court should not have intervened because counsel did not immediately object to his questions or to the answers. As shown by the record quoted above, the initial question was clearly about the 1984 shutdown. No objection was raised. There was a question that began to go past the May 27 cutoff date, which drew an objection and statement by the trial court. The witness answered another question with a comment about the shutdown, which drew a follow-up question—and then a warning by the trial court that he was outside the area of authorized testimony. Another series of questions was then asked, culminating in an answer beginning, "Well, after the program was shut down,...."

 In this argument, Onstad contends that in the absence of an objection by counsel, the trial court should not have interfered with the progression of the case by interjecting itself into the proceeding. In some contexts, this argument would have merit. However, this is not a typical evidentiary challenge. The issue raised here involves the authority of the trial court to enforce its pretrial rulings about the way in which the trial is to proceed. In such a situation, the trial court should not be required to wait for counsel to object before taking action. *See Kendrix,* 907 S.W.2d at 113.

In the *Kendrix* opinion, the court quotes from a 1963 opinion written by Justice Pope, in which he pointed out that a motion in limine seeks to exclude anticipated evidence and that when the court has ruled on the point, that evidence should not be offered in the presence of the jury. In language very similar to that used by the trial judge from the bench in this case, Justice Pope stated that the trial court should have granted a mistrial, writing

> The presentation of excluded matter to the jury by suggestion, by the wording of a question, or by indirection, violates professional standards and counsel's duty to the court.... There is a duty upon the court to rule decisively. When error creeps into the record, the court should instruct the jury to disregard it. The judge must do more. He must enforce his rulings. Violations of a court's solemn rulings should "lead to serious consequences."

*Burdick v. York Oil Co.*, 364 S.W.2d 766, 770 (Tex.Civ.App.—San Antonio 1963, writ ref'd n.r.e.) (citations omitted).

In the present case, the question of preservation of error by counsel to the admission of the "shutdown" testimony is not the issue. The overriding concern is the authority of the trial court to enforce its rulings. Accordingly, the question of whether counsel objected is immaterial to our analysis.

Onstad finally contends that any error on his part could have been corrected by an instruction to the jury, and thus the mistrial was unnecessary; therefore, the trial court caused the waste for which it ordered him to recompense opposing counsel.

 The trial court has discretion to grant or deny a motion for mistrial. *Schlafly v. Schlafly*, 33 S.W.3d 863, 868 (Tex.App.—Houston [14th Dist.] 2000, pet. denied). In reviewing the trial court's de-

cision, an appellate court does not substitute its judgment for that of the trial court, but decides whether the trial court's decision constitutes an abuse of discretion. *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991).

 Onstad argues that the matter of the subsequent shutdown, even if before the jury, was not of such importance that it could not have been withdrawn from the juror's minds by a proper instruction. The trial judge disagreed, stating at the trial that

> A mistrial is not something to be done lightly, and I realize that it is a step that the Court is reluctant to take, however I-in looking back at this, we had a lengthy motion that was presented to the Court, I believe on Monday at the pre-trial hearing, and possibly even on Tuesday prior to jury selection, about this very subject, as to whether or not the fact that the program at St. Michael's was shut down at some time after Mr. Woodruff's surgery would be admissible, and the Plaintiffs presented me with a brief. I considered it and Defense presented their side, and the final ruling was—the same ruling that I had previously had, and that is, that matters that occurred subsequent to this surgery would not be admissible. That was very clear. Obviously everybody knew the subject of a "shut down" was very important in the sense of having significant prejudice, and it did occur after the surgery in question here. And for whatever, the Court made that ruling, that ruling was clear, that ruling was direct, and very understandable.

After going through the previous day's testimony and analyzing it in detail, the court then concluded:

> This is a clear violation of the Court's ruling. I don't think, Mr. Onstad, you

could have not understood the Court's ruling, and it's one thing for a witness to introduce it. Maybe we should expect witnesses to—first of all, they should have been advised not to—even if he was, and that's definitely allowed it to slip in, that's one thing, but for the lawyer, the officer of the Court, the one who is subject to the Court's regulation, to then follow that question up with a direct question, "Did you have anything to do with the program being shut down"—is a direct violation of the motion in limine, of the ruling of the Court. The court then read aloud the previously cited quotation from Justice Pope, ordered a mistrial, and directed the setting of a hearing on sanctions.

The question before this court is whether the trial court abused its discretion by granting a mistrial. The record before this court reflects the importance and probable prejudicial effect of the "shutdown" testimony. The trial court concluded that the harm was not one that could be corrected by an instruction.[3] Under an abuse of discretion standard, the trial court did not act without reference to guiding rules or principles; indeed, it is quite clear that the trial court considered the matter carefully before rendering its decision, which was based on applicable authority.

**The Amount of the Sanction**

Onstad also contends that the amount of the sanction is unreasonable and not justified by the record. We have already addressed the portion of his argument that no sanction could exceed the amount statutorily provided for contempt proceedings. ▮▮▮▮ In a separate argument, Onstad relies on TEX. CIV. PRAC. & REM.CODE

ANN. § 7.011 (Vernon 1986), which provides that, "An attorney who is not a party to a civil proceeding is not liable for payment of costs incurred by a party to the proceeding." That argument fails for the simple reason that the sanction, although the amount was determined by the expense incurred in defending the suit, is not of itself a cost incurred by a party. Indeed, a party may *not* be punished with sanctions for his counsel's conduct unless the party is somehow independently culpable for counsel's actions. *Glass v. Glass,* 826 S.W.2d 683, 687 (Tex.App.—Texarkana 1992, writ denied).

This is an expense incurred by Onstad because of his actions and cannot be treated as a cost incurred by a party in this case.

Onstad finally contends that the amount of the sanction is excessive. He points out that the cost to him because of the mistrial was also considerable and argues that he should not also have to shoulder the burden of a monetary sanction in this amount. The sanction was measured by the expenses incurred in the actual defense at the trial, and limited to fees and expenses for work that would have to be redone and expenses incurred by counsel and parties in attending the trial.

▮▮▮▮ An appellate court can set aside a trial court's sanctions only for clear abuse of discretion. The test for abuse of discretion is whether the court acted without reference to any guiding rules and principles, or whether under all the circumstances of the particular case, the court's action was arbitrary or unreasonable. *Koslow's v. Mackie,* 796 S.W.2d 700, 704 (Tex.1990). A sanction for failure to obey a court order must always be appro-

---

**3.** *See Kendrix v. S. Pac. Transp. Co.,* 907 S.W.2d 111, 112–14 (Tex.App.—Beaumont 1995, writ denied); *Dove v. Dir., State Em-ployees Workers' Comp.,* 857 S.W.2d 577, 580 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

priate to the circumstances of the case. *Id.* at 703–04 n. 1; *Lassiter*, 824 S.W.2d at 669.

■ This sanction is without question a substantial one. However, after reviewing the information provided to the trial court, including the information about the expenses incurred in defending this lawsuit at the trial, we cannot say that the trial court's decision was arbitrary or unreasonable or that it was entered without providing due process to Onstad.

The judgment is affirmed.