## T. J. EARNEST v. THE STATE.

### No. 4927. Decided April 10, 1918.

**1.—Abortion—Evidence—Declarations of Third Parties.**

Upon trial of abortion, it was error to permit the prosecutrix to testify on her direct examination that certain medicines had been procured from a certain physician by the party who got her pregnant, as this did not involve the defendant directly or indirectly, and the statement of her paramour with reference to said physician or any medicine he may have procured from him was not binding on the defendant, and inadmissible.

**2.—Same—Evidence—Rebuttal—Remarks by Court.**

Where, upon trial of abortion, the theory of the State was that the prosecutrix got money from a certain bank to pay the defendant for an abortion, the defendant should have been permitted to show that this money was obtained for the purpose so that prosecutrix and her paramour might go to another State and procure a divorce for the paramour, and then marry him. Besides the court should not have expressed an opinion with reference to this testimony before the jury.

**3.—Same—Evidence—Rebuttal Testimony.**

Where, upon trial of abortion, the prosecutrix testified that she had missed her menstrual period sometime before she had gone to the defendant to procure an abortion, the court should have permitted the defendant to show that prosecutrix had testified with reference thereto in another proceeding which was embraced in a certain written statement of facts, to contradict her testimony with reference to those matters.

**4.—Same—Evidence—Examining Trial—Testimony — Contradicting Witness.**

Where, upon trial of abortion, defendant introduced in evidence certain isolated portions of examining trial testimony to impeach or contradict the prosecutrix's testimony on the instant trial, the State would have the right to introduce in evidence such portions of her examining trial testimony as bore upon and were explanatory of the testimony put in evidence by defendant, but not such portions thereof which did not shed light upon those introduced by defendant.

Appeal from the District Court of Eastland. Tried below before the Hon. Joe Burkett.

Appeal from a conviction of abortion; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Scott & Brelsford,* for appellant.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of leading questions, etc.: Link v. State, 73 Texas Crim. Rep., 82, 164 S. W. Rep., 987; Shaw v. State, 73 Texas Crim. Rep., 337, 165 S. W. Rep., 930.

On question of contradicting witness: McLin v. State, 48 Texas Crim. Rep., 549.

DAVIDSON, Presiding Judge.—Appellant was convicted of the crime of abortion, his punishment being assessed at two years confinement in the penitentiary.

The theory of the State was that a party named Hammett had had illicit relations with a girl named Lillie Hirt by which she became pregnant; that Hammett and the girl went to Ranger to see appellant, who was a physician, with a view of having an abortion committed upon her under the theory that she was pregnant. There was an issue as to whether she was pregnant or not, and an issue as to whether there was an abortion. The evidence tends strongly to show that it was a case of suppressed menstruation. The evidence fails to disclose that a foetus was discovered as a result of an abortion or attempted abortion. The girl upon whom the abortion is alleged to have been committed did not show that she was delivered of a foetus. If a foetus it was only to be arrived at by the circumstances. Her testimony does show that the doctor performed an operation, and that there was effusion of blood resulting from the operation. Appellant, testifying in his own behalf, stated that there was no foetus, and that he did not operate on the girl with a view of committing an abortion; that he did operate on her for gonorrhoea. The girl testified that she had had intercourse with Hammett, and that such illicit relations were procured by herself and looked to a divorce between Hammett and his wife, and a subsequent marriage of herself and Hammett, and that Hammett was to leave Texas and go to the State of Nevada with a view of procuring the divorce, and that thereafter they were to be married.

A bill recites that while the girl was testifying on her direct examination she testified that certain medicines had been procured from Dr. Miller by Hammett. This did not involve appellant directly or indirectly, and the statement of Hammett with reference to Dr. Miller, or any medicine he may have procured from Dr. Miller should not in any way be binding upon appellant. Dr. Miller was not upon trial, and was in no way connected with the transaction set out in the indictment.

Another bill recites that while Lillie Hirt was testifying appellant, on her cross-examination, propounded this question: "Isn't it true that you got $500 without your aunt's consent from the bank at Baird for the purpose of going off with Hammett, and that you trumped up this prosecution and claimed that he had misled you, and had taken your

money to procure a criminal abortion, in order to conceal the real scheme and plan that you and Hammett had?" At this point counsel was stopped by the court, and the witness informed that she need not answer, and the court then asked witness how much schooling she had had, and when witness replied three years, the court stated in the presence of the jury, "She does not understand all of those big words." Appellant objected to the court refusing to permit the girl to testify because it was testimony on a point highly material in order to show the motive of the witness; and further objected to the cross-examination of the witness by the court, as follows: "Q. Do you know what is meant by 'trumped up,' that is to hide what you were doing? A. Hammett, he kept on; he said he would go off and get a divorce—go to Nevada. I got the money to pay Earnest because he said he did not have any. I got it for Hammett to pay Earnest." Objection was also urged to this conduct on the part of the court. The court qualifies this bill by stating that the girl was an orphan of very little education, and the court was of opinion that she did not understand any except the simplest language, and counsel for defendant was instructed to ask said question in simpler language, which he refused to do, and then the court asked said question so witness could understand it. This explanation does not explain away the force and effect of the court's ruling and acts and words. The question asked and testimony sought to be elicited was admissible. The theory of the State was that the money obtained by the girl in the manner it was obtained from the bank was to pay Dr. Earnest for an abortion, while defendant was seeking to show that the money was obtained for the purpose of their going to Nevada, securing a divorce and then marrying. This was important, and was in direct conflict with the State's theory that the money was obtained to pay Dr. Earnest for the abortion, or criminal matters connected with the supposed pregnancy. We think this was very important testimony. The witness should have been required to answer it, and the court was wrong in refusing, in the first place, to admit it, and, in the second place, in his conduct and expression of his opinion with reference to it before the jury. This was violative of the statute.

Another bill recites that appellant placed on the stand Judge Blackburn, the trial judge who tried a certain criminal case in Callahan County, in the County Court of that county, in which prosecutrix testified with reference to certain matters, covered by her testimony in this case, and that defendant offered to present to the witness the statement of facts filed and approved in said cause at that time in Callahan County. The statement of facts was approved and it was offered to the witness, the trial judge, for the purpose of refreshing his memory, if it would, with reference to the facts on said trial of the witness Lillie Hirt, relative to said evidence, and the court refused to permit the defendant, in the presence of the jury, to identify, establish or prove said statement of facts in any manner by the witness, or to permit him to refer to the same in any manner as a statement of facts, and refused to permit

counsel to submit the writing to the witness and inquire with reference to the length of time that had elapsed after the prosecution until the statement of facts was made up. Exception was reserved to all this. By this it was sought to prove by the witness "that just before Christmas she had passed the time for her courses to come on about two weeks." The witness testified that he had carefully scrutinized the record and would not have signed and approved the statement of facts if it had contained any statements the witness did not make. The court says: "The witness was allowed to refresh his memory, but was not allowed to read said purported statement of facts to the jury because said statement was not made up until two weeks after the trial by him and was then prepared by counsel for defendant from memory." We are of opinion that the court was in error. This bill shows that the court refused to let this witness identify or establish the statement of facts, or to permit him to refer to it in any manner as a statement of facts. This seems to have been based upon the fact that the statement of facts in the County Court case was not made up until two weeks after the trial in that court. In this the court was in error. Whether the witness had a right to prove the exact statement of facts by his reading over the statement of facts is not so material as the fact that after reading it he could refresh his memory, and if he recalled it, then testify. The testimony would have been contradictory to the girl's testimony upon this trial. She testified on the trial she had missed her menstrual period some time before she had gone to Dr. Earnest. This testimony, if it had been permitted to be proved, would have been an attack on her testimony with reference to those matters, and should have been permitted.

Another bill recites the State of Texas introduced in evidence and read to the jury the following statement, being the testimony in the examining trial of T. J. Earnest, and which is: Then sets out several pages of the testimony taken in the examining trial. This was ruled out with the statement by the judge that: "This instrument was merely introduced. It was not read to the jury. It was not argued to the jury by the State or defendant. The reason it was introduced was because defendant had introduced numerous isolated parts and the whole was allowed introduced to explain in logical connection said testimony. But none of said statement was read to the jury by the State, and no reference was made to it." This bill is in such indefinite shape it is difficult to understand just what was done. The bill recites that the State introduced in evidence and read to the jury the following testimony, which sets out the testimony. This was objected to by appellant, and the court signs the bill by stating that it was not read to the jury, but was introduced because defendant had introduced numerous isolated parts, and the whole was allowed introduced to explain in logical connection said testimony. Upon another trial this matter should not occur as here detailed. If appellant introduced isolated portions of this examining trial testimony as impeachment or in contradiction of the girl's testimony on the final trial, then the State would have the right to intro-

duce such portions of her examining trial testimony as bore upon and were explanatory of those put in evidence by appellant, but that portion of the examining trial testimony that did not shed light upon those introduced by defendant would not be admissible. This is called to the attention of the trial court so that upon another trial this matter may be properly adjusted if it should arise. The rule is well settled in Texas both by the statute and the decisions that where one party introduces a fact favorable to himself and adverse to opposing party, the opposing party may meet this by such testimony as is legitimate and explanatory for his side as against that introduced in the first instance.

For the reasons indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST. JUDGE, absent.