In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00001-CR


______________________________




MARVIN WAYNE SNEED, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 336th Judicial District Court


Fannin County, Texas


Trial Court No. 20718




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Carter



O P I N I O N



 Marvin Wayne Sneed was charged with a four-count indictment alleging three offenses of
sexual assault of a child and one offense of indecency with a child. A jury found him guilty on all
counts and assessed punishment at three life sentences and one twenty-year sentence of confinement. 
On appeal, Sneed alleges the trial court erred in three respects: (1) replacing a juror with an alternate
juror, (2) admitting the complainant's prior testimony, and (3) restricting closing argument. There
is no challenge to the legal and factual sufficiency of the evidence. Therefore, we will discuss the
relevant facts when addressing the particular legal issues raised.

I. Replacing a Juror with an Alternate

 During the second day of testimony, the State moved the trial court to excuse one of the
jurors, explaining that, during the voir dire examination, the veniremembers were asked if they "had
any dealings with this office or with me, and no response was made by this particular witness." The
State explained that one juror had previously been placed on deferred adjudication for possession
of marihuana. After a discussion with counsel, the trial court excused the juror and substituted an
alternate juror over Sneed's objection. The actual question propounded to the venire on this subject
during voir dire examination was: "Anybody know or been represented by, good friends with, your
County Attorney Richard Glaser?" 

 Two statutes that apply to jurors are relevant: (1)

 Art. 36.29. If a Juror Dies or Becomes Disabled


 (a) Not less than twelve jurors can render and return a verdict in a felony case. 
It must be concurred in by each juror and signed by the foreman. Except as provided
in Subsection (b), however, after the trial of any felony case begins and a juror dies
or, as determined by the judge, becomes disabled from sitting at any time before the
charge of the court is read to the jury, the remainder of the jury shall have the power
to render the verdict; but when the verdict shall be rendered by less than the whole
number, it shall be signed by every member of the jury concurring in it. 


Tex. Code Crim. Proc. Ann. art. 36.29 (Vernon 2006).


 Art. 33.011. Alternate jurors


 (a) In district courts, the judge may direct that not more than four jurors in
addition to the regular jury be called and impaneled to sit as alternate jurors. In
county courts, the judge may direct that not more than two jurors in addition to the
regular jury be called and impaneled to sit as alternate jurors.


 (b) Alternate jurors in the order in which they are called shall replace jurors
who, prior to the time the jury retires to consider its verdict, become or are found to
be unable or disqualified to perform their duties. Alternate jurors shall be drawn and
selected in the same manner, shall have the same qualifications, shall be subject to
the same examination and challenges, shall take the same oath, and shall have the
same functions, powers, facilities, security, and privileges as regular jurors. An
alternate juror who does not replace a regular juror shall be discharged after the jury
retires to consider its verdict. 


Tex. Code Crim. Proc. Ann. art. 33.011 (Vernon 2006).

 The United States Constitution does not require a particular number of jurors necessary to
constitute a jury panel, only that the jury must be impartial. U.S. Const. amend. VI. However, our
state constitution does require a jury of twelve members for cases tried in district courts, but
provision is made for the Legislature to modify the rule to authorize verdicts by less than twelve. 
See Hegar v. State, 11 S.W.3d 290, 295 (Tex. App.--Houston [1st Dist.] 1999, no pet.) (citing Tex.
Const. art. V, § 13). 

 Before 1983, if a juror became disabled to perform the duties of a juror, by the terms of
Article 36.29 the trial court could allow eleven jurors to try the case. However, the test for whether
a juror was "disabled" was rather stringent. The court could exercise its discretion to complete the
case with eleven members only if the juror was disabled by some physical, mental, or emotional
condition which hindered the juror's ability to perform his or her duties properly. Landrum v. State,
788 S.W.2d 577, 579 (Tex. Crim. App. 1990). Even a bias for or against any law applicable to the
case did not render a juror disabled as envisioned by Article 36.29. Carrillo v. State, 597 S.W.2d
769, 771 (Tex. Crim. App. [Panel Op.] 1980). In 1983, the Legislature enacted Article 33.011
allowing trial courts to select alternate jurors who could be substituted if a juror became "unable or
disqualified" to serve, rather than requiring that the juror must be "disabled" as in Article 36.29. 

 Sneed argues that the juror was not disabled as required by Article 36.29, and the only valid
reason to remove her was if she was disqualified. To make this determination, Sneed analyzes
Article 35.16. He then argues that the evidence does not show that the juror was convicted of theft
or any felony, that she was under indictment or accusation for theft or any felony, that she was biased
or prejudiced in favor or against the defendant, or that she had formed a conclusion about the guilt
or innocence of the defendant. See Tex. Code Crim. Proc. Ann. art. 35.16(a)(2), (3), (9), (10)
(Vernon 2006). Based on this premise, Sneed argues the juror was not disqualified, and the trial
court erred in excusing this juror. 

 The State points out that the trial court has a great deal of discretion in determining if one is
biased or prejudiced for or against a defendant. Normally, this issue is presented when the trial court
fails to grant a challenge for cause after a venireperson has presented some information that could
be considered as more favorable to one side than the other, but has not clearly stated that he or she
is biased. The State cites Anderson v. State, 633 S.W.2d 851 (Tex. Crim. App. [Panel Op.] 1982),
for the general proposition that, if bias or prejudice is not established as a matter of law, the trial
court has discretion to determine whether bias or prejudice actually exists to such a degree that the
juror is disqualified. Id. at 853-54. In that case, a venireperson answered that she knew the
prosecuting witnesses and initially stated that she could serve fairly. Later, she admitted that it
"would be difficult" and "knowing them I would be more biased." Id. at 854. The defendant argued
these statements showed that this venireperson was biased and the court erred in failing to excuse
her. Id. at 853.

 We agree that the trial court has discretion in determining bias. In Anderson, the juror also
stated she would render a fair verdict and could set aside her knowledge of the State's witnesses. The
appellate court found the trial court did not err in failing to excuse the juror for cause. Id. Here, the
only thing we know about this venireperson is that she failed to answer when asked if she knew or
was a good friend of, or had been represented by the State's attorney. There is simply no evidence
on which to conclude the venireperson was biased as a matter of law. After this issue was presented,
the trial court elected not to question this venireperson concerning any possible bias, so there is no
record that might show such a bias. We do not believe this venireperson established she was biased
for or against Sneed or the State. The State has not established that this juror was legally disqualified
to serve. 

 We also recognize the rule that a juror's intentional misrepresentation of information in the
voir dire process has been held as a ground for the granting of a new trial. Von January v. State, 576
S.W.2d 43 (Tex. Crim. App. [Panel Op.] 1978). Of course a new trial may be granted by the trial
court only on behalf of the defendant. Tex. R. App. P. 21.1. However, the Texas Court of Criminal
Appeals has also held that mere familiarity with a witness is not necessarily material information. 
See Decker v. State, 717 S.W.2d 903, 907 (Tex. Crim. App. 1983) (op. on reh'g).

 It should be remembered that the alternate juror was chosen in the same manner as the first
twelve jurors. The alternates are subjected to voir dire examination, and the parties have additional
peremptory challenges which can be used in selecting the alternate jurors. Since our procedure now
allows the selection of alternate jurors in the same manner as the first twelve jurors, it seems
unnecessary that we should continue to require that a substitution can only be accomplished if the
first juror is physically or mentally ill or disqualified. See Ponce v. State, 68 S.W.3d 718, 721 (Tex.
App.--Houston [14th Dist.] 2001, pet. ref'd) (error to excuse juror and substitute alternate without
showing of illness or disability). The State argues that, according to the provisions of Article 33.011,
the substitution of an alternate juror when the original juror is "unable" to serve gives the trial court
broader discretion than it had under Article 36.29 in allowing eleven jurors to conclude the case only
when one juror became "disabled" to serve. While Article 33.011 does use the terminology allowing
replacement when a juror is "unable" to serve, one must strain to recognize real differences in the
meaning of the two words in this context. 

 "Unable" is defined as: not able: incapable, unqualified, incompetent, impotent, helpless. 
Merriam-Webster's Collegiate Dictionary 1359 (11th ed. 2006).

 "Disabled" is defined as: incapacitated by illness or injury; also: physically or mentally
impaired in a way that substantially limits activity especially in relation to employment or education. 
Id. at 355.

 We have already concluded the juror was not legally disqualified to serve. Further, there was
no suggestion that she was disabled by reason of a physical, mental, or emotional problem. To
conclude this juror was "unable" to serve requires an expansion of the usual understanding of that
word. She did not lack the necessary power, means, or capacity to serve. The statute simply does
not encompass the facts presented here. So we find that the trial court erred in substituting the
alternate juror in this instance. It appears the juror was excused because she had apparently failed
to reveal she knew the prosecutor (although that was never clearly established). Several cases have
discussed the lack of statutory guidance and other problems the courts confront in this field. (2) 

 When a trial court faces such a situation, there should be clear rules as to what action the
court should take. Our courts should not be required to parse fine distinctions between the words
"disabled" and "unable" in order to use a fully qualified alternate juror. We can perceive no
constitutional impediment in a procedure allowing the replacement of one fully qualified juror with
another, even without the establishment that the first is physically disabled or even unable to serve. 
This is an issue that regularly occurs in courtrooms across the State of Texas. When jurors are
summoned to serve, they come into an environment that is foreign and intimidating to many. It is
not uncommon, particularly in smaller counties, for a juror to recognize someone involved in the
case after he or she sees that person (after being seated on the jury). See Franklin v. State, 12 S.W.3d
473 (Tex. Crim. App. 2000). Additionally, family emergencies occur, as well as a myriad of events,
that may in fact interrupt jury service. We recommend the Legislature consider amending the statute
concerning the substitution of duly qualified alternate jurors for jurors on the panel who may have
developed legitimate reasons to be excused after the jury has been impaneled. This would include
a family emergency, a failure to divulge material information during voir dire examination, and other
reasons that establish good cause for excusing the juror and replacing him or her with another duly
qualified juror. This requires the exercise of judicial discretion by our trial courts, but since that is
the essence of a judge's role, we believe the trial courts of this state will properly exercise their
discretion in these matters. In the event of clear abuses, the appellate process is available. Other
state court systems have operated with such rules for many years. (3) If a clear set of rules existed for
trial courts to follow in substituting an alternate juror when there is good cause to replace the original
juror, we believe many difficulties could be avoided. (4) Further, an approved procedure for
substituting alternate jurors would encourage all courts to select alternate jurors.

 With that said, we will consider whether the error we find here requires reversal of this trial. 
We do not believe it does. We have already expressed that, to embody a constitutional violation, the
trial court's error would have to produce a biased jury. Neither the United States nor the Texas
Constitution prescribes the manner in which juries are selected. See Hegar, 11 S.W.3d at 295. This
error involves the application of a statutory scheme and is a nonconstitutional error. Ponce, 68
S.W.3d at 722. (5) Rule 44.2(b) of the Texas Rules of Appellate Procedure provides that any
nonconstitutional error, defect, irregularity, or variance that does not affect substantial rights must
be disregarded. Tex. R. App. P. 44.2(b). The record here does not show any taint from the
substituted juror. The juror was subjected to the same selection process, was properly sworn, and
heard all of the evidence. In an analogous situation, if the trial court erroneously grants a challenge
for cause for the State, reversal only occurs if the defendant shows that he or she was deprived of a
lawfully constituted jury. Feldman v. State, 71 S.W.3d 738 (Tex. Crim. App. 2002); Jones v. State,
982 S.W.2d 386, 394 (Tex. Crim. App. 1998). Sneed has not shown that he was deprived of a
lawfully constituted jury or that any of his substantial rights have been affected. Therefore, in
accordance with our rules, the error is disregarded. 

II. Admission of Complainant's Prior Testimony 

 A. Subject of Impeachment

 This case was tried twice. In the first trial, a jury was unable to reach a unanimous verdict
and the trial court granted a mistrial. The testimony of the complaining witnesses had been
transcribed for the second trial. In this case, the complaining witness testified fully on direct
examination. Cross-examination included an attempt to impeach the witness by using her testimony
given in the first trial. The State objected to such impeachment, arguing that this witness was a child
and that the defense attorney was intimidating her. A discussion ensued between counsel and the
trial court, and the State's attorney suggested that, if prior testimony was to be used for impeachment,
it would "allow us to put it in totality, so it's not taken out of context." The court then asked the
defense attorney, "What is your position on whether the document is able to be read in its entirety
to a jury after a witness has testified?" and suggested the attorneys should research the issue. An
issue in the case was that, even though the witness testified at the prior trial that the sexual assaults
occurred over a period of years, from a medical examination of the witness, there was no physical
evidence of the assaults. The defense attorney asked whether the witness testified that:

 Q. . . . [Sneed] would put his bad spot in your pee-pee; is that right? 

 A. Yes, sir. 

 Q. Would he do that every time he had sex with you? 

 A. Not every time. 

To impeach that testimony, defense counsel used the following portion of her prior testimony:

 Q. . . . "Would he always put his bad spot in your pee-pee?" And what
was your answer?


 A. "Yes."


 Q. And the question, "He would?" And speak up. What was your
answer?


 A. "Yes."


 Q. And the question, "Okay. And this would happen several times a
week for years; is that right?"


 A. "Yes, sir."


 When the defense attorney completed cross-examination of the witness, the State announced
to the court, "I intend to offer the remainder of -- the remainder of [the witness'] testimony in the
prior hearing. And I think Rule 107, the rule of optional completeness does that." After defense
counsel disagreed with that analysis of Rule 107, the court stated, "I'm going to allow the reading
of the prior testimony of this particular witness." The defense attorney objected. The State then read
the entire testimony of the complaining witness from the previous trial, consisting of approximately
fifty-two transcribed pages of testimony. 

 B. Error Preservation 

 1. Timeliness

 The State first argues that the issue was not preserved for appeal because Sneed did not
properly and timely object. The question as to the admissibility of the prior testimony was discussed
by counsel and the trial court several times. On the first day of trial, the State requested a
clarification as to the use of the impeachment testimony. The State objected to the defense attorney's
attempted use of the impeaching evidence in questioning witnesses other than the complainant. The
trial court indicated that the objections would be taken as they developed during the trial. The State
then suggested that a remedy would be to offer in its entirety the previous testimony of the
complainant. The defense attorney objected, specifically pointing out the prior statement contained
references to a "knife incident." The trial court then observed, "It is the Court's impression that the
document in its entirety is admissible." Later, the trial court said the prior testimony would be
"handled as a deposition would be." The trial court finally stated that the prior testimony would
come in "unless there is somebody here who has information to show me otherwise." The next day,
the events quoted earlier, involving the impeachment of the witness, occurred. The trial court asked
counsel to provide legal authorities on the issue of admitting the entire prior testimony of the witness
after the impeachment. Ultimately, the trial court admitted the entire testimony of the complaining
witness from the previous trial. The trial court did not admit any evidence from the previous trial
until the witness was cross-examined. In fact, the trial court advised counsel to provide legal
research on the issue. The issue regarding the admissibility of the complainant's prior testimony was
still a live one until after the complainant testified, at which time the trial court formally admitted
her entire prior testimony. We do not believe Sneed's objection was untimely.

 2. Proper Objection

 The State correctly represents that no hearsay objection to this particular evidence was ever
specifically presented by defense counsel. Rule 33.1 of the Texas Rules of Appellate Procedure
provides that a complaint must be made to the trial court by a timely request, objection, or motion
that: "stated the grounds for the ruling that the complaining party sought from the trial court with
sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were
apparent from the context; . . . ." Tex. R. App. P. 33.1(a). Here, the State moved the trial court to
allow the introduction of the entire prior testimony by stating: "I think Rule 107, the rule of optional
completeness does that." This framed the entire debate that occurred thereafter with the trial court
concerning the admissibility of the prior testimony. Defense counsel argued that the prior testimony
could be used for impeachment of a witness and acknowledged that, if he used part of the statement,
the opposing side was entitled to read the portions to complete it, but not the entirety of the previous
testimony. The court then ruled that the entire record of the prior testimony of the complainant could
be read to the jury, noting the defense's objection. The State now argues that, since Sneed did not
specifically object that the prior testimony was hearsay, he waived the error. 

 Was it necessary for counsel to specifically utter the word hearsay during his objections, or
was it apparent from the context that Sneed was objecting that the previous testimony was
inadmissible as hearsay? From the outset of the second trial, there seemed to be a concern about
how the testimony from the first trial would be handled. When it was proffered, several
conversations between the court and counsel had already taken place. The State announced that Rule
107 of the Texas Rules of Evidence was its rationale for admissibility. Sneed objected that it did not
meet the test for admissibility as required by that rule. The court overruled the objection and
admitted the entire record of the complainant's previous testimony. If this evidence had been
independently admissible, it would not have been necessary for the State to offer it under Rule 107. 
Indeed, the usual reason to invoke Rule 107 is to present evidence of a "writing or recorded
statement" other than one made by the declarant while testifying at the trial or hearing and offered
to prove the truth of the matter asserted. Tex. R. Evid. 107. One function of Rule 107 is to allow
evidence that otherwise would be inadmissible hearsay. Wright v. State, 28 S.W.3d 526, 535-36
(Tex. Crim. App. 2000). From reading the record of this trial, we believe it was apparent from the
context that the trial court and counsel had moved beyond a consideration of whether the
complainant's prior testimony was hearsay to a debate on whether, by the terms of Rule 107, it
constituted admissible evidence regardless of its hearsay nature. Sneed properly objected that the
testimony did not meet the requirements of Rule 107. We believe the alleged error has been
preserved for appeal. 

 C. Rule of Optional Completeness

 The underlying rationale for the rule of optional completeness is not new. In 1918, the Texas
Court of Criminal Appeals instructed a trial court as follows: 

 Upon another trial this matter should not occur as here detailed. If appellant
introduced isolated portions of this examining trial testimony as impeachment or in
contradiction of the girl's testimony on the final trial, then the state would have the
right to introduce such portions of her examining trial testimony as bore upon and
were explanatory of those put in evidence by appellant, but that portion of the
examining trial testimony that did not shed light upon those introduced by defendant
would not be admissible. 


Earnest v. State, 83 Tex. Crim. 257, 202 S.W. 739, 741 (1918).

 In the present case, counsel for the defendant attempted to impeach the complaining witness
on one specific portion of her testimony. During the second trial, counsel asked the witness if she
testified that Sneed "put his bad spot in your pee-pee; is that right? A. Yes, sir. Q. Would he do that
every time he had sex with you? A. Not every time." (Emphasis added.) 

 Apparently defense counsel thought that testimony conflicted with the witness' previous
testimony and directed her to a particular statement on page fifty-one in which she was asked,
"Would he always put his bad spot in your pee-pee?" . . . A. "Yes." So, in one instance, she agreed
that it occurred always; during the second trial, she stated, "[n]ot every time." That appears to be the
extent of the use of the witness' prior testimony for impeachment.

 By contrast, the evidence that the trial court allowed the State to present by virtue of Rule 107
was the entire testimony of the witness at the previous trial. Rule 107--the rule of optional
completeness--is as follows:

 When part of an act, declaration, conversation, writing or recorded statement
is given in evidence by one party, the whole on the same subject may be inquired into
by the other, and any other act, declaration, writing or recorded statement which is
necessary to make it fully understood or explain the same may also be given in
evidence, as when a letter is read, all letters on the same subject between the same
parties may be given. "Writing or recorded statement" includes depositions. 


Tex. R. Evid. 107.

 The Texas Court of Criminal Appeals has addressed similar situations several times. In
Jernigan v. State, 589 S.W.2d 681 (Tex. Crim. App. [Panel Op.] 1979), the testifying witness had
been previously deposed. On cross-examination, opposing counsel attempted to impeach the witness
with specific portions of the deposition. The State then moved to introduce the entire deposition,
consisting of approximately twenty pages. The Texas Court of Criminal Appeals found that
admission of the entire deposition "[p]lainly, . . . was not admissible at the instance of the State since
much of it was in no way related to the limited portions presented by appellant in attempting to
impeach the witness." (6) Id. at 694. Rule 107 limits evidence to the "same subject" as that offered by
the opposing party. 

 The purpose of this provision is to reduce the possibility of the fact-finder receiving a false
impression from hearing the evidence of only a part of the conversation, writing, act, or declaration. 
The theory behind the rule is that, by allowing the jury to hear the rest of the conversation on the
same subject, the whole picture will be filled out, removing any misleading effect which may have
occurred from the introduction of only a portion of the conversation. Obviously, this purpose is
achieved by receipt of the balance of the conversation on the same subject. But to permit under this
rule the introduction of other portions of such a conversation wholly unrelated to the matter initially
presented cannot contribute to achievement of the purpose of the rule. Consequently, it is improper
to rely on this rule as authority for the introduction of such unrelated portions. Roman v. State, 503
S.W.2d 252, 253 (Tex. Crim. App. 1974). Other cases with similar holdings are: Goldberg v. State,
95 S.W.3d 345, 387 (Tex. App.--Houston [1st Dist.] 2002, pet. ref'd) (questioning detective about
conversation with defendant regarding football game does not allow defendant to present entire
conversation with defendant about the events of day--unnecessary to correct a false or incorrect
impression of witness' testimony); Pinkney v. State, 848 S.W.2d 363, 367 (Tex. App.--Houston [1st
Dist.] 1993, no pet.) (error to introduce entire written statement of witness who had been questioned
only on portions of statement). 

 More recently, the Texas Court of Criminal Appeals has explained that "opening of the door"
by defense counsel questioning a witness regarding a videotape recording does not require the
automatic admission of the entire videotape. The court stated the "plain language of Rule 107
indicates that in order to be admitted under the rule, the omitted portion of the statement must be 'on
the same subject' and must be 'necessary to make it fully understood.'" Sauceda v. State, 129 S.W.3d
116, 123 (Tex. Crim. App. 2004) (citing Tex. R. Evid. 107). In a footnote, the court announced that
cases which broadly stated "that the whole conversation may be shown is not supported by the
language of the statute and should not be relied upon in the future." Sauceda, 129 S.W.3d at 123 n.5. 

 Here, the impeachment related to one statement of the witness. There was no showing that
the entire prior testimony was either on the same subject or was necessary to correct a false or
incorrect impression of the witness' testimony. 

 The State argues that the questions of the defense attorney "opened the door" for the witness'
entire previous testimony to put it in the proper context, citing Credille v. State, 925 S.W.2d 112
(Tex. App.--Houston [14th Dist.] 1996, pet. ref'd), which allowed an entire videotape of an
interview. The Texas Court of Criminal Appeals has construed Credille to stand for the proposition
that, when the defense references specific statements made by the complainant during a videotaped
interview which, if taken out of context, could create the possibility of the jury receiving a false
impression, the entire videotaped interview is properly admissible. Sauceda, 129 S.W.3d at 123. 
Here, the State did not suggest to the trial court, and has not argued here, that the impeachment
evidence presented a false impression of the testimony of the witness. 

 The State argues that the previous testimony of the witness is not hearsay as defined in Tex.
R. Evid. 801(d) as a statement "other than one made by the declarant while testifying at the trial or
hearing, offered in evidence to prove the truth of the matter asserted." Based on that definition, and
without reference to any authority, the State urges that, because the complainant testified at both the
previous trial and the present trial, her prior testimony was not hearsay, citing Rules 801 and 802 of
the Texas Rules of Evidence. We disagree. Rule 801(e) classifies certain prior testimony as
nonhearsay in very limited instances, none of which the State even argues is applicable here. See
Tex. R. Evid. 801(e). Rule 804 sets out an exception to the hearsay rule for some former testimony
"if the declarant is unavailable." Tex. R. Evid. 804(b). An important requirement for using Rule
804(b) as an exception to the hearsay rule is that the witness who testified previously is now
unavailable, which is inapplicable to this situation. If the State's argument is correct (that all former
testimony is not hearsay), Rule 804(b) would be unnecessary. For the reasons stated above, we hold
that the trial court erred in admitting the entire record of the complainant's testimony at the earlier
trial, as it was not admissible by the terms of Rule 107. See Tex. R. Evid. 107.

 D. Harm Analysis

 Now we must confront the difficult issue of whether the error was of such magnitude as to
require a reversal for another trial. As we previously discussed, a nonconstitutional error is
disregarded unless it affects a substantial right. See Tex. R. App. P. 44.2(b). A substantial right is
affected when the error had a substantial and injurious effect or influence in determining the jury's
verdict. King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United
States, 328 U.S. 750, 776 (1946)). Further, in Johnson v. State, 967 S.W.2d 410 (Tex. Crim. App.
1998), the Texas Court of Criminal Appeals stated: "A criminal conviction should not be overturned
for non-constitutional error if the appellate court, after examining the record as whole, has fair
assurance that the error did not influence the jury, or had but a slight effect." Id. at 417. 

 Here, we recognize that the complainant was effectively allowed to testify twice--her
testimony in open court at this trial and her previous testimony from the earlier trial. The State
argues this problem is ameliorated due to unusual circumstances peculiar to this case. 

 The testimony of the complainant at the first and second trial was very similar. The major
difference in the testimony was that the "knife incident" was given in more detail in the previous
testimony than in the present one. In the first trial, the complainant described how Sneed slapped
her, pulled her hair, and held a steak knife to her head. However, other testimony also was
introduced during this trial concerning the "knife incident." For instance, during cross-examination
of Officer Kelly Warren of the Bonham Police Department, Sneed asked Warren about the allegation
that Sneed "stuck a knife to the kid's head." Sneed then offered the videotape of Warren's interview
of Sneed made during the investigation of the alleged aggravated assault, which was played to the
jury. In the videotape, Sneed acknowledged that an event involving a knife occurred between him
and the complainant. According to Sneed, the child refused to do her chores and he took a small
butter knife and "poked her in the head" and then pushed her. 

 Additionally, recorded statements given by the complainant and her sister to the Child
Protective Services' worker were introduced into evidence. While numerous objections were made
to those videotapes at trial, no complaint is made on appeal concerning their admissibility, so we are
not called on to address that issue. The videotape evidence that was introduced consisted of four
videotapes: (1) an interview of the complainant October 4, 2002, (2) an interview of the
complainant's sister November 20, 2002, (3) an interview of the complainant April 4, 2003, and
(4) an interview of the complainant's sister April 17, 2003. Apparently, the jury was allowed to view
the videotapes in a room adjoining the courtroom under the watch of the bailiff--a procedure
approved by counsel for the State and Sneed. During the April 4, 2003, videotape of the
complainant, she described to a social worker the sexual assaults in the same manner, or even in
more detail, as described in live testimony and her testimony from the previous trial. Also received
into evidence without objection was a notation made March 28, 2003, by counselor Michelle Griffith
concerning the complainant's report of the sexual assaults. In that report, Griffith quotes the
complainant reporting an outcry against Sneed that he would call her into his room and would "try
to have sex with me." Additionally, the State introduced, without objection, the report of the sexual
assault examiner, which quoted the complainant as follows: "My dad, he had sex with me. He put
his wienie in my pee-pee. . . . Started when I was around 4 years old and it never stopped, until I was
11 years old. . . . He would lick my pee-pee and my boobs. He told me not to tell anybody or he
would get in trouble." 

 In view of the numerous other instances of testimony admitted concerning the complainant's
allegations toward Sneed, and after examining the record as a whole, we think the error in admitting
the complainant's prior testimony at most could have had only a slight effect on the jury and
therefore is not reversible error. 

III. Limitation of Jury Argument

 Immediately before the attorneys were to present their arguments to the jury at the
guilt/innocence stage, the State moved the court to limit defense counsel from arguing about "other
cases where people were wrongly accused." Defense counsel responded that he should be allowed
to argue "your thoughts, your experiences . . . and analogies." The trial court then sustained the
objection and instructed that no argument should be allowed on "anything that's outside the record
. . . . And other cases of wrongly convicted and spending time wrongly convicted will not be
allowed."

 Sneed argues that counsel should be given wide latitude in drawing inferences from the
evidence so long as they are fair, legitimate, and offered in good faith. See Gaddis v. State, 753
S.W.2d 396, 398 (Tex. Crim. App. 1988). He further argues that counsel should be allowed to make
references to "history, fiction, personal experience, anecdotes, Bible stories or jokes." On that
premise, Sneed argues it is common knowledge that, throughout history, both men and women have
been wrongfully convicted, quoting Herrera v. Collins, 506 U.S. 390 (1993). However, Sneed does
not point to any specific argument that he was denied.

 In general, appellate review requires a record to review. This issue illustrates the rationale
for that requirement. After the court announced its view regarding the general subjects that were not
authorized for argument, no offer was made as to the particular argument counsel proposed. This
is important because it is difficult, and probably improper, for an appellate court to speculate as to
what specific argument counsel was denied. The trial court admonished counsel not to argue
"outside the record"--a traditional basis for excluding jury argument. More specifically, counsel was
directed not to discuss "other cases of wrongly convicted." In general, that may be a reasonable
limitation, as it is not permissible to discuss the specific facts of a particular case (which would
necessarily be outside the record) and then compare those with this case. However, it would not
seem improper to note universally recognized instances of wrongful convictions (e.g., Salem witch
trials, Sir Thomas More) when asking the jury to carefully and deliberately evaluate the evidence
before returning a verdict. The point is--since there is no offer of the argument--we do not know
what reference counsel might have made and whether that particular reference was proper or
improper. Therefore, we conclude, without such an offer of the proposed argument, we cannot
determine that error was committed. The point of error is overruled.

 For the foregoing reasons, we affirm the judgment of the trial court. 




 Jack Carter

 Justice


Date Submitted: October 11, 2006

Date Decided: November 21, 2006


Publish


1. Article 36.29(b) applies in capital murder cases. 
2. Broussard v. State, 910 S.W.2d 952 (Tex. Crim. App. 1995) (alternate juror replaced an ill
juror who had work-related problems before jury was sworn, even though no statutory provision
governed, replacement was approved); Brown v. State, 183 S.W.3d 728 (Tex. App.--Houston [1st
Dist.] 2005, pet. ref'd) (court failed to substitute alternate juror who spoke to policeman-witness,
record showed no bias, proper to refuse to substitute alternate); Winfrey v. State, 104 S.W.3d 282
(Tex. App.--Eastland 2003, pet. ref'd) (disqualifed juror replaced by next venireperson from original
panel, no statutory authority, acceptable option); Gentry v. State, 881 S.W.2d 35 (Tex. App.--Dallas
1994, pet. ref'd) (ill juror replaced by next eligible juror--held improper procedure); Williams v.
State, 631 S.W.2d 955 (Tex. App.--Austin 1982, no pet.) (selected replacement juror from panel
of five from central jury, no statutory provision, approved).
3. See David B. Sweet, Annotation, Propriety, Under State Statute or Court Rule, of
Substituting State Trial Juror with Alternate After Case has been Submitted to Jury, 88 A.L.R. 4th
711 (1991). 
4. For instance, if it is discovered that a juror has failed to reveal material information during
voir dire, or if a juror recognizes a participant in the trial, a substitution by a qualified alternate
would avoid a trial that may be unfair and require a retrial. It also ensures the jury will be composed
of twelve members rather than attempting to invoke Article 36.29 to allow eleven members to return
a verdict.
5. The error in this case did not deprive Sneed of a twelve-member jury. Even though Sneed
alleges it was error to dismiss the original juror, the jury was composed of twelve properly selected
members. See Chavez v. State, 91 S.W.3d 797, 801 (Tex. Crim. App. 2002) (citing Rivera v. State,
12 S.W.3d 572, 579 (Tex. App. --San Antonio 2000, no pet.)).
6. The statute being reviewed was Article 38.24 of the Texas Code of Criminal Procedure,
which was the predecessor to Rule 107 of the Texas Rules of Evidence.


e time.  That they
didnt feel it was handled, the situations with the children, adequately.  And also supports our argument that theyre
good parents and their vigilance as to the care or lack thereof that their
children were receiving in care.  So he
feels that it really impacts his case in terms of his service completion and
best interest of the children. 

 

            An offer of proof was made outside
of the presence of the jury.  With
respect to medication being given to the children, Brown merely testified that
the children were prescribed medication by a psychiatrist who was treating them,
but the parents disagreed with administration of the medication.  As to allegations of sexual abuse of the
children, Brown testified that although one of the children alleged that
another child in the home was giving him a butt massage, an investigation by
CPS into the incident initially ruled out the alleged sexual abuse.  However, concerns arose as to whether the
child was coached by the foster mother, and all of the Neyenses
children were removed from that foster home and placed in a different foster
home, as the Neyenses had requested.  

            The trial court sustained CPSs
objection to this testimony, stating:

What
happened in foster care has nothing to do with whether there [were] grounds to
remove the children in the first place and secondly, whether the parents have
responded appropriately that termination should not occur.  

            If down the road we get into a
situation as to who should be the managing conservator of these children, if
theyre not terminated, then I think the conduct of what happened in foster
care may be relevant.  

            But as to the issue of termination
its not. . . .

            So Ill instruct counsel not to
enquire further about the condition or treatment of the children in foster care
for the purpose of this hearing.  

 

            Later in the trial, counsel for Mr. Neyens completed the cross-examination of Court Appointed
Special Advocates (CASA) case supervisor, Shila
Whitaker.  Counsel pass[ed] the witness, asked the trial court to approach the
bench, and told the judge that [t]here are some questions I need to ask
[Whitaker] outside the presence of the jury, about the foster home incident,
for the record.  Noting that [t]his is
an offer of proof outside the presence of the jury, the court heard testimony
from Whitaker on voir dire that one of the Neyenses children indicated that he had received a butt
massage from a foster brother.  Whitaker
also testified that the children had sustained injuries while they were left
under the care of a teenager during placement in another foster home.  She noted these injuries during a supervised
visitation and described them as a cut over the right eye, bruising on the
face, and divots on the face.  CASAs
investigation of the injuries led Whitaker to believe the injuries were
sustained [w]hen they were riding their bikes. . . . through
trees.  After the testimony was taken,
the court stated that the offer of proof is concluded.  

            C.        Analysis 

            The Neyenses
argue that while the trial court was correct in ruling that what happened in
foster care had nothing to do with the grounds for termination and whether the
parents responded appropriately, the conditions and treatment of the children
in the foster homes was critical to the consideration of the determining
factors regarding whether termination was in the childrens best interest.[1]  The Neyenses
maintain that the trial court erred in excluding the testimony of Brown and
Whitaker concerning the alleged sexual abuse incident, the injuries to the
children, and the matter of medication while in foster care.  

1.         The Neyenses failed to secure an
adverse ruling with respect to Whitakers testimony

 

            To preserve error concerning the
exclusion of evidence, the complaining party must actually offer the evidence
and secure an adverse ruling from the court. 
Lister v. Walters, 247 S.W.3d
381, 383 n.1 (Tex. App.Texarkana 2008, no pet.) (quoting Perez v. Lopez, 74 S.W.3d 60, 66 (Tex. App.El Paso 2002, no
pet.)).  

            While an offer of proof was made as
to Whitakers testimony, the record demonstrates that it was made after the
witness was passed by the counsel and outside the presence of the jury on voir dire. 
However, after having made a record of the testimony, counsel made no
attempt to proffer this testimony, either during cross-examination or after the
offer of proof had concluded.  In other
words, although the record of the intended testimony was made, no request was
made of the court to allow the introduction of that testimony.  The trial court did not rule on the admissibility
of the testimony because it had not been offered.  Because the trial court did not rule on the
request, objection, or motion, either expressly or implicitly, or did not refuse
to rule on the request, objection, or motion, the Neyenses
failed to preserve the issue of alleged error in failure to admit Whitakers
testimony.  Tex. R. App. P. 33.1.  

            This point of error is overruled. 

                        2.         Trial court did not err in excluding
Browns testimony 

            The Neyenses
argue that the jury was prevented from adequately considering the current and
future emotional and physical danger of the children, the parenting abilities
of the persons seeking custody and the stability of the home of proposed
placement because the trial court did not admit Browns testimony of the
alleged sexual abuse and concern about medications administered to the
children.  

            Mrs. Neyens
was able to testify that investigations had been conducted of two foster homes
where the children were placed.  As a
result of these investigations, she told the jury that although the allegations
of sexual assault had never been substantiated, the children were, nonetheless,
removed from the foster home where the incident was reported and were placed in
a different foster home.  The newer
foster parents were interested in adopting two of the three children.    

            Counsel for the Neyenses
advanced the theory that Browns testimony would be relevant to the finding
regarding the best interests of the children. 
The trial court could have determined that allegations of sexual abuse
occurring at a previous foster home were not relevant to the best interest
finding since the children had been removed from that home.  Specifically, the court could have ruled that
the allegation of sexual abuse in the previous placement would not affect the current
and future emotional and physical danger of the children, the parenting
abilities of the persons seeking custody, or the stability of the home of
proposed placement.  Additionally, the
trial court could have further found the testimony that the parents were
concerned about the childrens medications being administered to the children
by a psychiatrist inconsequential to the best interest inquiry.  

            It might be said that the incidences
involving the children and the complaints of the parents regarding those
incidences reflect adversely on the past choices made by CPS concerning the
placement of the children, choices which might be somewhat relevant as
predictors of likely possible bad future choices, which might adversely affect
the children. If one adopts that viewpoint, it could be said that the evidence
which was sought was not entirely irrelevant. 
However, the Texas Rules of Evidence also prescribe that even relevant
evidence may be excluded if its probative value is substantially outweighed by
the danger of unfair prejudice, confusion of the issues, or misleading the
jury.  Tex.
R. Evid. 403. 
In these circumstances, it appears that CPS acted promptly and in what
appears to be an abundance of caution, to what seems to have been
unsubstantiated problems, removing the children from the foster home in which
they were located.  The trial court could
easily have believed that the trial concerning the welfare of the children
could deteriorate into a trial on the practices of CPS in its selection of
foster homes, thwarting the primary object of the trial itself.  Accordingly, the trial court could have believed
that the danger of confusion of the issues outweighed the probative value of
the tales concerning the post-removal experiences of the children.  The trial court was within its discretion in
excluding this testimony. 

            For the reasons stated above, we
find no abuse of discretion in the trial courts ruling.  

            Moreover, there is nothing to
establish (even if one assumes the trial court erred in its ruling), that the
assumed error was reasonably calculated to cause and probably did cause
rendition of an improper judgment.  R.A.L., 291 S.W.3d at 446.[2]  The Neyenses make
no  challenge to the sufficiency of the
evidence supporting the best interest finding made by the jury.[3]  

            We overrule this point of
error.  

II.        Trial
Court Did Not Abuse Its Discretion in Denying Motion for Mistrial 

            Prior to trial, the court granted a
motion in limine prohibiting any reference to
alleged criminal activity on the part of ROY NEYENS that occurred before the
birth of the children or occurred outside the presence of the children or
outside their sphere of awareness. 
During cross-examination of therapist Carolyn Jewett, the motion in limine was violated, producing the following transcript:

            Q.        And
thats  and would  would you elaborate? 
Is there anymore basically to tell the jury of how you got to your
evaluation that some of themsome of the questions were answered dishonestly?

 

            A.        Well
a lot of it is also subjective.  A lot of
it is talking to them.  Talking about
their history.  You know, she was married
that first time at age 13.  Hes 20 years
older than she is.  There was a lot of
dysfunction all throughout their family life. 
I believe this is the fourth time CPS has intervened in their  into
their life, with their children.  There
was a lot of dysfunction as far as fighting. 
Even though theres no domestic violence legally there, due to his
criminal history there 

 

                        MR.
PARIS:  Objection, Your Honor. 

 

                        THE
COURT:  Sustain. 

 

            A.        Charges
that he had a criminal history 

 

                        MR.
PARIS:  Objection, Your Honor.  May we approach?

 

                        MS.
ARMSTRONG:  Your Honor 

 

                        MR.
PARIS:  Im this close to moving for a
mistrial. 

 

                        MS.
ARMSTRONG:  Okay.  Your Honor, this is for purposes of medical
diagnosis and treatment.  She has to do
an analysis based on the persons entire life. 
Shes informed by them of their their criminal history.  Ms. Jewett is speaking as a doctor. . . .

 

                        MR.
PARIS:  The jury can hear every word
counsel is saying, Judge. 

 

                        MS.
ARMSTRONG:  Okay.  Im sorry. 
Im not trying  Im not trying to talk loud. 

 

                        THE
COURT:  Well take a break. 

 

            As the trial court directed, the
jury was removed and the Neyenses move[d] for a
mistrial for a direct violation of this courts motion in limine.  Counsel stated,

            Its obvious that this witness was
not prepped in any way . . . . That its obvious she wasnt instructed by
counsel, as counsel was instructed by this court to do, not to mention certain
things.  And she mentioned it.  I objected and she mentions it again the very
next thing.  We move for mistrial. 

            Theres no way that prejudice can be
removed from this  this jury.  They
heard it and then they  they could hear, because I backed up to see how loud
it was.  They could hear Ms. Armstrongs
stage whisper to the court, in order to try to make a record.  I understand, but none the less, in the
presence of the jury.  Those things were
heard.  The explanations by Ms. Armstrong
were heard and the damage has been done.

 

            [A] motion in limine
is a preliminary ruling by a trial court. 
Onstad v. Wright, 54 S.W.3d 799, 805 (Tex.
App.Texarkana 2001, pet. denied).  It is
a procedural device that permits a party to identify, before trial, certain
evidentiary rulings that the court may be asked to make so as to prevent the
asking of prejudicial questions and the making of prejudicial statements in the
presence of the jury.  Id. (citing Hartford Accident & Indem. Co. v. McCardell, 369 S.W.2d 331, 335 (Tex. 1963), abrogated on other grounds by Bay Area
Healthcare Group, Ltd. v. McShane, 239 S.W.3d 231
(Tex. 2007); Fort Worth Hotel Ltd. Pship v. Enserch Corp., 977 S.W.2d 746, 757 (Tex.
App.Fort Worth 1998, no pet.)).  The
purpose of a motion in limine is thus to prevent the
other party from asking prejudicial questions and introducing prejudicial
evidence in front of the jury without first asking the courts permission.  Id. (citing
Weidner v. Sanchez, 14 S.W.3d 353,
363 (Tex. App.Houston [14th Dist.] 2000, no pet.)).  When a trial court issues an order granting
such a motion in limine, the opposing party has a
duty to comply with that order and to instruct the witnesses to do the same,
and noncompliance with that order may lead to contempt or other sanctions the
trial court deems appropriate.  Id. 

            We review a violation of an order
granting a motion in limine to see if [the violation
is] curable by an instruction to the jury to disregard them.  Id. (citing
Dove v. Dir., State Employees Workers Comp. Div., 857 S.W.2d 577 (Tex.
App.Houston [1st Dist.] 1993, writ denied)). 
Violations of an order on a motion in limine
are incurable if instructions to the jury would not eliminate the danger of
prejudice.  Id. (citing Dennis v. Hulse, 362 S.W.2d 308, 309 (Tex. 1962); Kendrix v. S. Pac. Transp. Co., 907 S.W.2d 111,
114 (Tex. App.Beaumont 1995, writ denied); Dove,
857 S.W.2d at 580).  The violation of a
motion in limine may entitle a party to relief, but
any remedies available with regard to such a violation lie with the trial
court.  Id. at 806 (citing Brazzell v. State,
481 S.W.2d 130, 131 (Tex. Crim. App. 1972)). 
If its order has been violated, the trial court may apply the sanctions
of contempt or take other appropriate action. 
Id. (citing Lewis v. State, 627 S.W.2d 492, 494
(Tex. App.Houston [1st Dist.] 1981, no pet.)).[4]

            The Neyenses
argue that the trial court should have granted a mistrial in order to eliminate
the danger of prejudice, urging that the failure to do so was error.  The trial court has discretion to grant or
deny a motion for mistrial.  Id. at 808 (citing Schlafly v. Schlafly, 33 S.W.3d 863, 868 (Tex.
App.Houston [14th Dist.] 2000, pet. denied)). 
In reviewing the trial courts decision, an appellate court does not
substitute its judgment for that of the trial court, but decides whether the
trial courts decision constitutes an abuse of discretion.  Id.
(citing Beaumont Bank, N.A. v. Buller,
806 S.W.2d 223, 226 (Tex. 1991)).

            The trial court denied the Neyenses motion for mistrial, stating,

There
has been no specifics of any sort mentioned in which criminal past could
include a traffic ticket.  But I will
instruct the witness not to testify further about the criminal record . . . .
as the criminal record that the courts aware of is remote in time and
inconsistent with any of the allegations that are the basis of this lawsuit.[5]

 

            The Neyenses
failed to move to strike Jewetts testimony regarding Mr. Neyens
criminal record, and failed to ask the court to instruct the jury to disregard
Jewetts statements about criminal charges. 
By denying the motion for mistrial, the trial court could have concluded
the alleged violations insufficiently consequential to warrant the severe
sanction of a mistrial.  The court could
also have determined that any prejudice resulting from mention of criminal
charges could have been cured by an instruction to the jury to disregard had
such a request been made.  In either
event, we find the trial court acted within its discretion.  See Opuiyo v. Houston Auto M. Imports, LTD, No.
14-09-00894-CV, 2011 WL 61853, at **34 (Tex. App.Houston [14th Dist.] Jan. 6,
2011, no pet.) (mem. op.).  We overrule the Neyenses issue regarding asserted violations of the order
granting the motion in limine.

III.       Conclusion


            We affirm the judgment of the trial court. 

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date
Submitted:          December 5, 2011

Date
Decided:             December 9, 2011

 











[1]In
deciding whether termination would be in the best interest of the child, a
trial court considers this nonexclusive  list
of factors:  (1) the desires of the
child; (2) the emotional and physical needs of the child now and in the future;
(3) the emotional and physical danger to the child now and in the future;
(4) the parental abilities of the individuals seeking custody; (5) the programs
available to assist these individuals to promote the best interest of the
child; (6) the plans for the child by these individuals or by the agency
seeking custody; (7) the stability of the home or proposed placement; (8) the
acts or omissions of the parent which may indicate that the existing
parent-child relationship is not a proper one; and (9) any excuse for the acts
or omissions of the parent.  Holley v. Adams, 544 S.W.2d 367, 37172
(Tex. 1976).  The Neyenses
do not independently challenge the sufficiency of the evidence supporting the
best interest determination.  Rather,
they contend that the evidence of treatment in the foster home was relevant to
factors three, four, and seven, which are considered when making the best
interest finding, and therefore, the evidence should have been admitted.  





[2]The
Holley factors are not exhaustive, no
single consideration is controlling, and a fact-finder is not required to consider
each factor.  Holley, 544 S.W.2d 367.

 





[3]Rather,
the Neyenses contend that [e]vidence
regarding the best interest of the children in this case was critical and
disputed.  The Neyenses
brief cites to a portion of the record supporting the best interest
finding.  The dispute is left to the fact-finder
to resolve. 





[4]The
Neyenses did not challenge the admissibility of this
testimony, and we do not address admissibility. 






[5]After
the break, the trial court neglected to admonish the witness.